**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**9:14-cv-80983-KLR**

DAVID SCAROLA, individually and on behalf
of all others similarly situated,

          Plaintiffs,

   v.

THAT'S HOW WE ROLL, LLC, a Delaware
Limited Liability Company,

          Defendant.

_____/

**DEFENDANT THAT'S HOW WE ROLL LLC'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS**
**CERTIFICATION AND TEMPORARY STAY (DKT. NOS. 5 AND 6)**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................ I

TABLE OF AUTHORITIES ............................................................................................. III

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 4

      A.     The Parties ................................................................................................ 4

      B.     Defendant's Labels ................................................................................... 6

      C.     Dippin' Chips Sales and Prices ................................................................ 6

      D.     Rubinstein's Attempt to Coerce Defendant ............................................ 7

      E.     The Complaint .......................................................................................... 8

      F.     The Motion for Class Certification ......................................................... 8

ARGUMENT ..................................................................................................................... 8

I.      PLAINTIFF'S REQUEST TO STAY HIS OWN MOTION SHOULD BE
        DENIED ................................................................................................................ 8

II.     PLAINTIFF CANNOT MEET HIS BURDEN UNDER RULE 23 ................................. 9

      A.     None of the Rule 23(a) Requirements Is Met ...................................... 11

             1.     The Putative Class Is Not Ascertainable ................................... 11

             2.     Plaintiff Is Not an Adequate Class Representative ................... 13

                  a.     Rubenstein Has a History of Professional Misconduct ................ 13

                  b.     Rubenstein Engaged in the Same Misconduct in This Case ......... 14

             3.     Plaintiff's Claims Are Not Typical of the Class Because He Does Not
                 Identify What He or the Purported Class Believe "Natural" to Mean ...... 15

      B.     Plaintiff Cannot Meet Any of the Requirements of Rule 23(b) ........... 16

             1.     The Requested Injunction Is Moot Under Rule 23(b)(2) ........... 16

                   a.     Defendant No Longer Labels Its Products as "Natural" ............... 17

|   | b. | Plaintiff Does Not Intend to Purchase the Products Again | 17 |

2.   No Rule 23(b)(3) "Damages" Class Can Be Certified ........................... 18

   a.   There Is No Way to Prove Class-Wide Damages ....................... 18

   b.   Individualized Issues Predominate this Action ........................... 19

   c.   A Class Action Is Not a Superior Way to Resolve This Dispute .. 20

CONCLUSION ................................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................ 22

SERVICE LIST ............................................................................................... 22

## TABLE OF AUTHORITIES

### CASES

*Aaronson v. Vital Pharm., Inc.*, No. 09-cv-1333, Dkt No. 76 (S.D. Cal. Feb. 3, 2012) .............. 14

*Astania v. Ben & Jerry's Homemade, Inc*., 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ............... 10

*Astania v. Kashi Co*., 291 F.R.D. 493 (S.D. Cal. 2013) .......................................... 10, 20

*Balser v. Hain Celestial Gp., Inc*., 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013)...................... 15

*Brooks v. State Bd. of Elections*, 173 F.R.D. 547 (S.D. Ga. 1997)................................... 14

*Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014) ..................... 3

*Carrera v. Bayer Corp*., 727 F.3d 300 (3d Cir. 2013) ............................................ 12

*Chin v. Gen. Mills, Inc.*, 2013 WL 2420455 (D. Minn. June 3, 2013) ........................ 15

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ......................................... 1, 3, 18

*Figy v. Frito-Lay North Am., Inc.*, 2014 WL 3953755 (N.D. Cal. Aug. 12, 2014) ................. 3, 17

*Florida Bar v. Adorno*, 60 So.3d 1016 (2011).............................................. 2, 15

*Hernandez v. Chipotle Mexican Grill Inc*., 2013 WL 6332002 (C.D. Cal. Dec. 2, 2013) .......... 12

*Hodes v. Van's Int'l Foods*, 2009 WL 2424214 (C.D. Cal. July 23, 2009).................................. 20

*In re Terazosin Hydrochloride Antitrust Litig*., 223 F.R.D. 666 (S.D. Fla. 2004) ...................... 13

*Innovation Ventures, LLC v. Howard W Rubinstein et al.*, 2012 WL 5992116
  (Cal. App. 4th, Nov. 29, 2012) ............................................................. 13

*Jones v. ConAgra*, 2014 WL 2702726 (N.D. Cal. June 23, 2014) ....................................... passim

*Karhu v. Vital Pharm., Inc*., No. 13-60768-CIV, 2014 WL 815253
  (S.D. Fla. Mar. 3, 2014) ............................................................ 2, 10, 11, 12

*Little v. T–Mobile USA, Inc*., 691 F.3d 1302 (11th Cir. 2012) ..................................... 11

*Love v. Turlington*, 733 F.2d 1562 (11th Cir. 1984)................................................ 16

*Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957 (S.D. Cal. May 13, 2013)..................... 17

*O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469 (S.D. Fla. 2006).................................. 16

*Pelayo v. Nestle USA, Inc.*, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) ........................... 15, 16

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985)......................................................... 13, 15

*Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000)................................................. 13

*Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ....................................... 15

*Rahman v. Mott's LLP*, 2013 WL 325241 (N.D. Cal. Jan. 29, 2014)........................................... 17

*Red v. Kraft Foods, Inc.*, 2012 WL 8019257 (C.D. Cal. Apr. 25, 2012)....................................... 12

*Robinson v. Hornell Brewing Co.*, 2012 WL 1232188 (D.N.J. April 11, 2012) ......................... 17

*Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ........... 10

*Stewart v. Beam Global Spirits & Wine, Inc.*, Case No. C 11-5149 NLH/KMW, 2014 WL

2920806 (D.N.J. June 27, 2014) ........................................................................................... 12

*Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680 N.D. Ga. 2013) ............................................. 16

*Tomasino v. Estee Lauder Co. Inc., et al.*, 2014 WL 4244329 (E.D.N.Y. Aug. 26, 2014) .......... 17

*True v. ConAgra Foods, Inc.*, Case No. 07-cv-00770, 2011 WL 176037

(W.D. Mo. Jan. 4, 2011) ...................................................................................................... 20

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003) .................................. 13

*Veal v. Citrus World, Inc.*, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013).................................... 3, 17

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ........................................................ 9

*Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ............... 10, 18

## <u>STATUTES</u>

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ........................... 8

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*............................................................. 8

**<u>RULES</u>**

Fed. R. Civ. P. 11 ................................................................................................................. 8

Fed. R. Civ. P. 23 .......................................................................................................... passim

Defendant That's How We Roll, LLC ("Defendant" or "Dippin' Chips") respectfully

submits this Memorandum of Law in Opposition to Plaintiff David Scarola's Motion for Class

Certification (Dkt. No. 5) and Request to Stay his own motion for class certification (Dkt. No. 6).

## INTRODUCTION

Defendant Dippin' Chips is a start-up snack food company that sells bowl-shaped party

chips that can hold a heaping scoop of your favorite dip without disintegrating.  This purported

consumer "class" action was brought by the law office of a disbarred and repeatedly suspended

Texas lawyer, Howard Rubinstein, who has papered California (and now Florida) with over 60

labeling lawsuits against food companies.[1]

In his Complaint, cut-and-pasted from other similar Rubinstein cases, Plaintiff alleges

that the word "natural" on a discontinued label misled him and a class of consumers into

believing Dippin' Chips contained no corn grown from "genetically modified" seeds.  He offers

no definition of what he (or anyone else) believed "natural" or "genetically modified" to mean,

or how this reconciles with the Food and Drug Administration ("FDA") findings that virtually all

food is "genetically modified" and that the term is a misnomer.  (Request for Judicial Notice,

"RJN," Ex. 2.)

The day after filing the Complaint, Plaintiffs' lawyers brought this motion to certify a

class without submitting any evidence.  They do not explain how alleged class members could be

identified.  They offer no method for how damages could be proven in view of *Comcast Corp. v.

Behrend*, 133 S. Ct. 1426 (2013), and present no grounds for seeking an injunction over products

whose labels were long ago changed and which Plaintiff admits he would never purchase again.

Instead, they have asked the Court not to rule on their own motion, and to allow them to use the

---

[1] Due, in part to Rubinstein's efforts, the Northern District of California has been dubbed by journalists and, with some concern, by jurists, as "food court."  (Declaration of J. Noah Hagey ("Hagey Decl.") ¶¶ 32-33, Ex. 19.)

*in terrorem* threat of expensive class discovery to coerce a large settlement payment.

Because all the facts relevant to certification were publicly available to Plaintiff and his lawyers (the real instigators of this lawsuit) before they filed this case, and because there is no possibility of certifying a class as a matter of law, the Court can and should resolve the issue of class certification now on any of the following dispositive grounds:

1.      **The "Class" Is Not "Ascertainable**."  To certify any class, the Court must be able to ascertain who the class members are.  Fed. R. Civ. P. 23(a).  Courts have repeatedly refused to certify nearly identical "natural" consumer classes where, as here, there are no records of who bought the products.  *E.g.*, *Karhu v. Vital Pharm., Inc*., No. 13-60768-CIV, 2014 WL 815253 *3 (S.D. Fla. Mar. 3, 2014) (Cohn, J.) (denying class certification because Defendant sold product to retailers, not consumers, and due process precludes allowing "individuals to identify themselves as class members through the submission of affidavits").  Plaintiff offers no allegations, evidence or even a proposal for how such a class could be ascertained here.

2.      **Plaintiff and His Lawyers Are Not Adequate**.  Plaintiff has provided no support to show he will adequately represent the class under Rule 23(a), nor offered any evidence showing that his definition of "natural" is the same as the definition shared by any of the alleged class.  His lawyers are likewise inadequate.  Howard Rubinstein, whose firm filed the complaint, and sent a draft to Defendant in January 2014, was disbarred in Texas for stealing client funds, was recently disciplined for not disclosing his disbarment on *pro hac vice* applications, has been rejected as class counsel in similar labeling cases, has had his *pro hac vice* privileges revoked in other actions, and already tried secretly to enrich himself in this case at the expense of the purported "class" he hopes to represent.  *See also Florida Bar v. Adorno*, 60 So.3d 1016 (2011); Hagey Decl. ¶¶ 2-17, 18-31, Exs. 1-18.

     **3.**     **Any Injunctive Relief Is Moot**.  Plaintiff fails to advise the Court that Defendant permanently removed the word "natural" from its labels before Plaintiff first contacted the Company and long before this case was filed.  Thus, no class can be certified under Rule 23(b)(2).  *Figy v. Frito-Lay North Am., Inc.*, 2014 WL 3953755 (N.D. Cal. Aug. 12, 2014) (denying "all natural" injunction claims because "offending labels were no longer being printed when Plaintiffs filed their complaint.")  Plaintiff cannot seek an injunction to prevent any alleged future "harm" because he admits he "would not have purchased the Products had they known that they contained ingredients that are not 'All Natural.'"  (Compl. ¶ 53.)  *Veal v. Citrus World, Inc.*, 2013 WL 120761 (N.D. Ala. Jan. 8, 2013) ("Plaintiff's apparent concern that he may still, perhaps accidentally, purchase Defendants' products is too hypothetical or conjectural to create standing to pursue injunctive relief on behalf of the proposed class.").

     **4.**     **There Is No Damages Class**. Under *Comcast*, no damages class can be certified unless the plaintiff presents a non-junk science damages model capable of measuring damages across the putative class.  Applying *Comcast*, courts have repeatedly refused to certify damages classes in nearly identical consumer cases, specifically rejecting the "price premium" theory advanced by Plaintiff.  *See*, *e.g.*, *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 791 (11th Cir. 2014) (reversing district court for failing to conduct "rigorous analysis" required by *Comcast* as to whether class damages would require individual inquiries); *Jones v. ConAgra*, 2014 WL 2702726, *19-23 (N.D. Cal. June 23, 2014) (Breyer, J.) (rejecting "price premium" theory in "all natural" suit).  Plaintiff does not explain what premium he or anyone paid, how he could prove one when consumers paid different prices on different packages with different labels, or what substitute goods class members would have bought.  Such a theory is doubly infirm here because the price remained the same after "natural" was removed from the label.

**5.      None of the Other Rule 23 Requirements Are Met**. To certify a class, Plaintiff also must prove that group treatment of his claims is possible because the class is uniform, and there is a manageable way to adjudicate common factual and legal issues.  Because consumer understanding and preferences are not uniform, he cannot meet any of these requirements.

**a.      No Typicality**. The government has taken the position that the term "genetically modified" is a misnomer and that GM foods are no different than non-GM foods. (RJN, Ex. 2.)  Plaintiff does not explain what he thought "natural" or "genetically modified" meant, how he was fooled, or how other consumers were similarly, and uniformly, misled.

**b.      Lack of Predominance**. Under Rule 23(b)(3), Plaintiff must prove that common factual and legal issues predominate over individualized ones.  Here, each purported class member bought Dippin' Chips for individual and unique reasons:  taste, ability to hold dip, impulse, package color, *etc*.  Over 20 labels were used during the proposed class period, and "natural" only appeared only about half of them, in small font at the very top of the bag where many buyers could not see it.  Plaintiff submits no evidence that consumers uniformly saw and were deceived by "natural" or even cared about it at all – much less how such individuals, if any, could ever be identified, or which attributes, if any, on which labels influenced them.

**c.      No Superiority**.  Rule 23(b)(3) also requires proof that a damages class is superior to other forms of litigation.  Given the impossible management issues created by simply trying to figure out who, if anyone, would be in the class, for a group of products with over 22 different labels during a constrained period of time, this requirement is not met.

## FACTUAL BACKGROUND

The facts set forth below are based exclusively on admissions in Plaintiffs' Complaint and information publicly available to the parties.

**A.      The Parties**

Defendant is a small company that makes bowl-shaped tortilla chips designed to facilitate maximum dipping.  The products are made from natural ingredients, including white corn, oil, and vegetables.  (Declaration of Samuel Kestenbaum, ("Kestenbaum Decl."), ¶ 2.)  The products' labels accurately describe the ingredients and FDA nutrition facts, and there is no allegation in the Complaint that the packaging violates any FDA regulation or law.  (*Id*.)

Plaintiff claims he was misled into buying Dippin' Chips by the words "All Natural" appearing in small font on the top of an old version of packaging.  (Compl. ¶¶ 50-57.)  He asserts that the phrase, which he never defines (and which even the FDA has held is incapable of definition) (RJN, Ex. 1), is inconsistent with his subjective view of "natural" because the products allegedly contained corn that was "genetically modified."  (Compl. ¶ 50.)  Plaintiff, however, fails to describe what even that term means – an issue repeatedly highlighted by the FDA in its refusal to distinguish between genetically and non-genetically modified foods or ingredients, *to wit*:

> FDA has no basis for concluding that bioengineered foods differ from other foods in any meaningful or uniform way, or that, as a class, foods developed by the new techniques present any different or greater safety concern than foods developed by traditional plant breeding…. FDA is therefore reaffirming its decision to not require special labeling of all bioengineered foods.

(RJN, Ex. 2).[2]

The real party in interest is the Law Offices of Howard Rubinstein.  Rubinstein was disbarred in Texas for unethical conduct, including taking payments to clients and keeping them.  (Hagey Decl., ¶ 18, Exs. 5-6.)  Since being disbarred, Rubinstein has filed almost 60 food cases

---

[2]  The FDA likewise has held that the term "genetically modified" is itself a misnomer given the numerous and unavoidable ways in which crops and seeds have been modified by intentional human techniques over the past several thousand years. (RJN, Ex. 2.) ("Terms like 'not genetically modified' and GMO free,' that include the word 'modified' are not technically accurate unless they are clearly in a context that refers to bioengineering technology. "Genetic modification" means the alteration of the genotype of a plant using any technique, new or traditional…Most, if not all, cultivated food crops have been genetically modified.")

and threatened hundreds of similar "natural" class action lawsuits against food companies.  (*Id*. ¶ 32.)  First, he sends a demand letter along with a boilerplate complaint seeking injunctive relief and "damages" on behalf of a purported class.  (*Id*. ¶¶ 2-3, Ex. 1.)  Then, in exchange for a large payment based on supposed company's sales, rather than actual purchases or alleged attorney's fees, he will settle the claim privately pre-suit, and keep the money for himself.  (*Id*. ¶¶ 4-17.)  If a company refuses Rubinstein's demands, he files suit through affiliate lawyers.  (*Id*. ¶ 17)

### B.    Defendant's Labels

Plaintiff has leveled allegations against three products:  "Veggie," "Three Bean," and "Super Grains."  (Compl. ¶ 1.)  Retail sales of these products in Florida first began around August 2013.  (Kestenbaum Decl. ¶ 7.)  As of the filing of the Complaint, two of these brands no longer existed.  (*Id*. ¶¶ 8,11.)  Specifically, in September 2013, Ancient Grain was renamed "Super Grain," and in April 2014, Three Bean was renamed "Fiesta Bean."  (*Id*.)

Many of the labels on Defendant's products never had any "natural" description.  (*Id*. ¶ 4.)  Further, in addition to the name changes on Three Bean and Ancient, the product labels for various sizes (including the 20 oz., 17.5 oz., 8 oz., 5 oz. and 1 oz. packages) were available in over 20 different versions during the alleged class period.  (*Id*. ¶ 3.)

In December 2013, before being contacted by Rubinstein, Defendant elected to remove "natural" from all of its product labels.  (*Id*. ¶ 9.)  Defendant has no intention to include the word "natural" on its labels in the future.  (*Id*. ¶ 12.)  At present, to the best of Defendant's knowledge, no Dippin' Chips products labeled "natural" are being sold in Florida.  (*Id*.)

### C.    Dippin' Chips Sales and Prices

Defendant is aware of no price "premium" tied to its former use of "natural."  (*Id*. ¶¶ 13-16.)  Sales of Defendant's products at issue increased after the "natural" label was removed. (*Id*. ¶ 13.)  The price that Defendant charged to its distributors and retailers also remained the same or

increased. (*Id*. ¶ 16.)  Defendant sells its products to distributors, grocery chains and big box stores.  It almost never sells products directly to consumers.  (*Id*. ¶¶ 14-15.)  During the alleged class period, Defendant sold at least some of the three products to Target, Publix, Costco, Monell Distributors (which redistributes to smaller retailers), and Winn Dixie in Florida.  (*Id*. ¶ 14.)

### D.      Rubinstein's Attempt to Coerce Defendant

On January 16, 2014, Rubinstein sent Defendant a demand letter and draft complaint. (Hagey Decl., Ex. 1.)  He threatened to file a public suit unless Defendant provided him with sales information in order to arrange a settlement and large attorneys' fee payment.  (*Id*.)

On January 30, 2014, Defendant emailed Rubinstein that his complaint had no merit, contained false allegations and was pointless because Defendant had decided to remove "natural" label from its labels before his letter and only had been selling products with the "natural" label for only a period of months.  (*Id*. ¶ 5, Ex. 2.)  The letter also offered to refund any purchases made by Plaintiff, pursuant to Defendant's standard policy, and enclosed a check for $200.  (*Id*.) Within two minutes of his receipt of the offer, and apparently without consulting his alleged client, Rubinstein rejected the proposal.

From February to June 2014, Defendant engaged in discussions with Rubinstein in an effort to convince him not to file this case.  (*Id*. ¶¶ 10-17.)  Rubinstein made clear in negotiations, however, that he applies a "sliding scale" formula to private settlements, with payments to his firm sometimes reaching "7 figures."  (*Id*.)  This was explicated in a March 31, 2014 email, in which Rubinstein justified his need for sales data, *i.e.*, even though the case would settle on a private basis (*id*. ¶ 14) (emphasis added, typos in original)):

> Noah, the sales data is not complete. We need 4 years not 2... Assuming natl sales using your numbers. **A private settlement of sales over 5 million would exceed 200,000 and those approaching 20 million in sales would approach 7 figures.**. Other variables would need to be considered.. How long before the Ads would be changed... Would you wait for the product to be sold or taken off the shelves...

We don't want this matter to linger on much longer. We would consider a mediation of this matter as well....

In an effort to avoid the significant defense costs involved, Defendant again offered to refund Plaintiff's purchases and pay whatever actual attorneys' fees Rubinstein had incurred. (*Id*. ¶ 16-17, Ex. 4.)  Rubinstein did not respond and proceeded to file the case.  (*Id*.)

### E.     The Complaint

But for the addition of two photos and two short paragraphs, and an additional lawyer, the Complaint is identical to the form complaint in Rubinstein's January 2014 letter.  It alleges that Dippin' Chips' old "natural" label was misleading because three unspecified products contained "unnatural, synthetic, artificial, and/or genetically modified ingredients, including, but not limited to, White Corn, Corn Oil, and/or Toasted Corn Germ."  (Compl. ¶ 1.)

The Complaint purports to assert claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*. ("FDUPTA") and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"), and common-law claims for negligent misrepresentation, breach of express warranty, and unjust enrichment.  (Compl. ¶¶ 73-129.)

### F.     The Motion for Class Certification

The day after filing this action, Plaintiff filed this motion without submitting any evidence.  He claims that he will "conduct discovery to fully develop the facts needed for certification" and asks the Court to stay his own motion until whenever that may be.

## <u>ARGUMENT</u>

## I.     PLAINTIFF'S REQUEST TO STAY HIS OWN MOTION SHOULD BE DENIED

Plaintiff cites no federal or local rule permitting a party to stay its own motion.  To the contrary, the Rules require that before leveling class allegations in a pleading and before moving to certify a class, a plaintiff must have a reasonable basis in fact and law.  Fed. R. Civ. P. 11;

*Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2013) (class certification is evidentiary motion); *Stone v. Bloomfield Sav. & Loan, F.A.*, 1987 WL 16911 *1 (N.D. Ill. Sept. 4, 1987) (Rule 11 sanctions where "Plaintiffs' class certification motion was not based on a reasonable interpretation of the facts and was without foundation. Plaintiffs' perfunctory motion made no attempt to show, nor could it have shown, that the requirements of Rule 23(a) had been met.").  .

Plaintiff submitted no evidence with his perfunctory motion and argues "the proposed class will prejudiced because Plaintiff will be required to … submit a memorandum of law in support of class certification." (Dkt. No. 5 ¶ 15.)  His "stay" request is a naked admission he had no basis for his class allegations before filing his Complaint, or the instant motion.  As shown below, all the evidence in Defendant's opposition brief comes from publicly available sources known to Plaintiff and his lawyers – and from sales data Defendant voluntarily provided Plaintiff pre-suit in hopes of avoiding this baseless action.  In such circumstances, there is no point in staying the motion.[3]  The class allegations can, and should, be resolved now given that class certification never could occur here, and leaving such allegations pending will needlessly increase the burden and expense of this action – as intended by Plaintiff's lawyers.

## II.      PLAINTIFF CANNOT MEET HIS BURDEN UNDER RULE 23

The party seeking class certification must prove that all the requirements of Rule 23(a) and at least one requirements under Rule 23(b) is satisfied.  *Wal-Mart*, 131 S. Ct. at 2551.  "'A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class.'"  *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1266 (11th Cir. 2009) (quotation omitted).

---

[3] Local Rule 7-6 provides:  "A continuance of any trial, pretrial conference, or other hearing will be granted only on exceptional circumstances."  A continuance may only be granted if it is "supported by affidavit setting forth a full showing of good cause."  *Id*.  The only affidavit accompanying Plaintiff's request does not even speak to "good cause" and misleadingly suggests that Michael Fraser, Esq. drafted the Complaint on July 25, 2014 (Dkt. No. 7 ¶ 4), when the Complaint was drafted by Rubinstein and sent to Defendant on January 16, 2014.  (Hagey Decl., Ex. 1.)

Courts routinely have denied class certification in identical labeling cases because it is impossible to determine who the class members are, what damages, if any, they sustained, and individualized issues about why they bought the products and whether they even cared about the term " natural" predominate.  *See*, *e.g.*, *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253 *3 (S.D. Fla. Mar. 3, 2014) (Hon. James I. Cohn) (FDUPTA class not ascertainable because defendant sold products to retailers, making it impossible to identify who bought products).  Other courts around the country are of similar accord, *e.g.*:

- ***Astania v. Ben & Jerry's Homemade, Inc.***, 2014 WL 60097 *7, *13 (N.D. Cal. Jan. 7, 2014) (denying class certification because "plaintiff has not established that her claims are typical of those of the class, in part because she has not identified an ascertainable class" and because "under *Comcast*, the plaintiff is required to provide 'evidentiary proof' showing a classwide method of awarding relief that is consistent with plaintiff's theory of liability. Here, however, plaintiff has provided no damages evidence. More importantly, her failure to offer a damages model that is capable of measurement across the entire class for purposes of Rule 23(b)(3) bars her effort to obtain certification of the class.")

- ***Sethavanish v. ZonePerfect Nutrition Co.***, 2014 WL 580696 *6 (N.D. Cal. Feb. 13, 2014) ("Plaintiff has yet to present any method for determining class membership, let alone an administratively feasible method. It is unclear how Plaintiff intends to determine who purchased ZonePerfect bars during the proposed class period, or how many ZonePerfect bars each of these putative class members purchased. It is also unclear how Plaintiff intends to weed out inaccurate or fraudulent claims. Without more, the Court cannot find that the proposed class is ascertainable.")

- ***Astania v. Kashi Co.***, 291 F.R.D. 493, 508 (S.D. Cal. 2013) ("Plaintiffs fail to sufficiently show that 'All Natural' has any kind of uniform definition among class members, that a sufficient portion of class members would have relied to their detriment on the representation, or that Defendant's representation of 'All Natural' in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members.")

- ***Weiner v. Snapple Beverage Corp.***, 2010 WL 3119452 *10 (S.D.N.Y. Aug. 5, 2010) ("plaintiffs offer no evidence that a suitable methodology is available to prove the elements of causation and actual injury on a class-wide basis. Individualized inquiries would therefore be required in order to determine whether class members in fact paid a premium for Snapple beverages, and whether any such premium was attributable to the 'All Natural' labeling. This

would require, among other things, an examination of each of the millions of class members' Snapple purchases, which the evidence shows were made in different locations, at different times, and for different prices").

The same is true in this case.

### A.     None of the Rule 23(a) Requirements Is Met

As shown below, Rule 23(a)'s requirements of ascertainability, adequacy, and typicality are not, and cannot be met.  Any of the reasons below, alone, requires denial of certification.

### 1.     The Putative Class Is Not Ascertainable

A plaintiff seeking certification of a class "must establish that the proposed class is "adequately defined and clearly ascertainable."  *Little v. T–Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012).  Courts repeatedly have found that ascertainability does not exist when there is no administratively feasible method for identifying class members.  *E.g.*, *Karhu v. Vital Pharm., Inc*., No. 13-60768-CIV, 2014 WL 815253 *3 (S.D. Fla. Mar. 3, 2014).

In *Vital*, Judge Cohn applied this principle to a FDUTPA case alleging that a nutritional supplement failed to burn fat as advertised.  The Court held:  "Because Karhu has failed to propose a realistic method of identifying the individuals who purchased Meltdown, he has failed to show that the Proposed Classes are sufficiently ascertainable."  *Id*.  The Court first rejected the idea that class members could be identified by company sales records because defendant sold its products to retailers, not consumers.  *Id*.  ("Karhu suggests that VPX's sales data would allow the Court to identify members of the Proposed Classes. VPX, however, makes the bulk of its sales to distributors and retailers, and sells directly to consumers relatively infrequently.  Accordingly, VPX does not have a record of the identities of most members of the Proposed Classes.").

The Court next rejected the idea that class members could be identified through receipts. *Id*. ("Because purchasers are less likely to retain receipts or other records of minor purchases, courts have been reluctant to rely on those proofs to ascertain the identities of class members.").

Finally, the Court rejected identifying member by affidavit.  It explained:  "Accepting affidavits of Meltdown purchases without verification would deprive VPX of its due process rights to challenge the claims of each putative class member.  On the other hand, allowing VPX to contest each affidavit would require a series of mini-trials and defeat the purpose of class-action treatment. Using affidavits to determine class membership would also invite fraudulent submissions and could dilute the recovery of genuine class members."  *Id.* (citations omitted).

*Vital* follows an avalanche of cases denying certification for this very reason.  *Carrera v. Bayer Corp.*, 727 F.3d 300, 308-12 (3d Cir. 2013) (denying certification of FDUTPA class as there was no way to determine who bought products); *Stewart v. Beam Global Spirits & Wine, Inc.*, 2014 WL 2920806, *7 (D.N.J. June 27, 2014) (denying certification of "natural" claims because "obtaining this information by way of affidavits does not appear to be an effective method for ascertaining the Classes.  Without any independently verifiable proof of purchase through receipts, retail records, or otherwise, the Court finds it unlikely that putative class members will accurately remember every Skinnygirl Margarita purchase they made during the class period, let alone where these purchases were made and the prices they paid each time.  It is also unclear how Plaintiff intends to weed out inaccurate or fraudulent claims.").[4]

This case is identical to *Vital* and the decisions cited above.  Defendant sells its products to retailers, and very rarely to consumers.  (Kestenbaum Decl. ¶ 14-15.)  As such, it is impossible to determine who the purported class members might be.  (*Id.*)   Here, the supposed class would

---

[4] *ConAgra*, 2014 WL 2702726 at *11 ("the lack of receipts and the low cost of the purchases, means that consumers are unlikely to accurately self-identify. Plaintiffs have offered no verifiable means of identifying class members. And so the Court finds that the class is unascertainable."); *Hernandez v. Chipotle Mexican Grill Inc.*, 2013 WL 6332002 *1 (C.D. Cal. Dec. 2, 2013) (denying certification because "the dispute concerns a very low price transaction that neither the class members nor Chipotle maintain any specific record of or could be expected to recall"); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257 *4 (C.D. Cal. Apr. 25, 2012) ("the Court fails to see how it will be—as it must be—'administratively feasible to determine whether a particular person is a class member'").

be even more difficult to ascertain because the products had 22 different labels during proposed

class period, half of which did not say "natural."  (*Id*. ¶ 3.)

### 2.    Plaintiff Is Not an Adequate Class Representative

Plaintiff must prove "the representative parties will fairly and adequately protect the

interests of the class."  FRCP 23(a)(4).  This requirement applies to plaintiff and his lawyers.  *In*

*re Terazosin Hydrochloride Antitrust Litig*., 223 F.R.D. 666, 673 (S.D. Fla. 2004).

Plaintiff is not an adequate representative because he has not alleged facts to show that

his understanding of what "natural" means (in fact, he has offered no definition) is the same as

any supposed absent class.  He has thus failed to prove he would protect the class interests.[5]

Plaintiff's lawyers are also inadequate.  By filing a class action lawyers have "accepted a

fiduciary obligation towards the members of the putative class."  *Piambino v. Bailey*, 757 F.2d

1112, 1144 (11th Cir. 1985).  They breach that duty "if they have improperly used the class

action procedure for their personal aggrandizement."  *Id*.  By his serial professional and pre-

litigation misconduct, Rubinstein has shown he is inadequate to protect the class.

### a.    Rubenstein Has a History of Professional Misconduct

Courts all over have sanctioned Rubinstein and/or rescinded his *pro hac vice* and bar

privileges on account of various ethical violations.  *E.g.*, *Innovation Ventures, LLC v. Howard W*

*Rubinstein et al.*, 2012 WL 5992116, at *7 (Cal. App. 4th, Nov. 29, 2012) (accepting malicious

prosecution claims against Rubinstein where he demanded "substantial monetary payment" of

attorney's fees and "brazenly offered to sell 'protection' to Innovation" in return for such

---

[5] If the class members and Plaintiff disagreed over the meaning of the term "natural," Plaintiff could not represent the class.  *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) ("'It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.'") (quoting Wright & Miller, FED. PRACTICE AND PROC. § 1768 at 326 (2d ed.1986)); *Valley Drug Co. v. Geneva Pharm., Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003) ("If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate").

payment); *Aaronson v. Vital Pharm., Inc.*, No. 09-cv-1333, Dkt No. 76 (S.D. Cal. Feb. 3, 2012) (rejecting Rubinstein as class counsel because he "consistently failed to follow court orders, abide by court deadlines, and vigorously litigate the case," describing his motion for class certification as "half-coherent" and "gibberish," and noting repeatedly that Rubinstein failed to file a reply in support of plaintiff's motion for class certification).[6]

In 1983 Rubinstein was disbarred in Texas.  In 2006 he was suspended in Texas.  Just last month the Texas Bar *again* suspended Rubinstein – facts which he often fails to disclose on *pro hac vice* applications.  (Hagey Decl., Ex. 6 .)  Rubinstein's most recent suspension in September 2014, appears to arise from him making misrepresentations in at least 10 *pro hac vice* applications and failing to file *pro hac vice* applications in dozens of cases in California and Colorado, where he is not admitted to the bar.  (Hagey Decl., ¶¶ 26-30, Exs. 16-17.) Rubinstein's history of misconduct, alone, renders him inadequate given the heightened fiduciary obligations of class counsel and danger that class counsel will attempt to exploit his position to obtain attorney's fees for himself.  *Brooks v. State Bd. of Elections*, 173 F.R.D. 547, 551 (S.D. Ga. 1997) (the "hallmarks of inadequate representation [are] self-interest or incompetence").

> **b.** **Rubenstein Engaged in the Same Misconduct in This Case**

In an effort to avoid this lawsuit, Defendant offered to refund all of Plaintiff's purchases and pay all the nominal attorney's fees for any work Rubinstein actually had performed.  (Hagey Decl., ¶¶ 11-17, Ex. 4.)  Rubinstein rejected the offer because Defendant refused to make a large payment to him based on a percentage of the company's *nationwide* sales rather than actual time spent.  (*Id.* ¶¶ 10-17.)  By proposing to not bring class claims in exchange for more fees than he was otherwise entitled to recover, Rubinstein was trying to leverage the class claims for his own,

---

[6] Michael Fraser, who signed the pleading, is a 2009 law graduate who was not involved in pre-suit negotiations.

personal benefit.  This is the precise conduct that the adequacy requirement guards against. *Piambino*, 757 F.2d at 1144; *Adorno*, 60 So.3d at 1024.

Further, since January 2014, Rubinstein has known that the alleged labeling violations existed for only a few months of the class period and were removed months before his demand letter.  (Hagey Decl., Ex. 2.)[7]  He has nonetheless insisted upon filing his complaint along with class allegations that he now admits he cannot support in hopes of extorting fees.  This is a separate reason why he is not adequate counsel.

### 3. Plaintiff's Claims Are Not Typical of the Class Because He Does Not Identify What He or the Purported Class Believe "Natural" to Mean

Plaintiff must prove "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Rule 23(a)(3); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).

In "natural" labeling cases, to state a claim, plaintiff must allege what he or she believed "natural" to mean.  *Pelayo v. Nestle USA, Inc.*, 2013 WL 5764644, *4 (C.D. Cal. Oct. 25, 2013) (dismissing "natural" claims because "Plaintiff has failed to allege either a plausible objective definition of the term 'All Natural' or her subjective definition of the term 'All Natural' that is shared by the reasonable consumer"); *Balser v. Hain Celestial Gp., Inc.*, 2013 WL 6673617, *1 (C.D. Cal. Dec. 18, 2013) ("Plaintiffs have not alleged what they believed the representation 'natural' to have meant … Plaintiffs cannot plausibly allege they were deceived"); *Chin v. Gen. Mills, Inc.*, 2013 WL 2420455, *8-9 (D. Minn. June 3, 2013) (dismissing "natural" claims as Plaintiffs did not allege "what they believed '100% Natural' to mean").

This rule exists because it is unclear what "natural" means in the context of a processed

---

[7] The proposed class period is from January 6, 2009 (Mot. at 2), yet the Dippin' Chips "brand did not launch until Spring 2013, and the "natural" labeling was removed in Fall 2013."  Hagey Decl., Ex. 2.

snack.  *Pelayo*, 2013 WL 5764644 at *4 ("the reasonable consumer is aware that Buitoni Pastas are not 'springing fully-formed from Ravioli trees and Tortellini bushes'").  The FDA has declined to define the term "natural" given the lack of any common understanding as to its meaning (RJN, Ex. 1), and United States Department of Agriculture regulations provide GM foods *can* be labeled natural.  (RJN, Ex. 3.)  In refusing to define "natural" to exclude GM foods, the FDA expressly found:  "Most, if not all, cultivated food crops have been genetically modified.  Data indicate that consumers do not have a good understanding that essentially all food crops have been genetically modified and that bioengineering technology is only one of a number of technologies used to genetically modify crops."  (RJN, Ex. 2.)

Against this backdrop, Plaintiff has not proved typicality.  He has not stated (or even alleged) what he believes the term "natural" to mean.  Nor has he offered any allegation or supposition about what the purported class believes it to mean.  He does not state a claim for relief much less prove his claims are typical of those of the class.  *See O'Neill v. The Home Depot U.S.A., Inc*., 243 F.R.D. 469, 478 (S.D. Fla. 2006) (denying certification of FDUPTA claim because plaintiff did not read misrepresentation and putative class included those who did).

Moreover, Plaintiff has not proven any typical understanding of the word "natural."  When courts must "conduct a fact-specific inquiry into each consumer's situation," typicality is not met.  *Taylor v. Screening Reports, Inc*., 294 F.R.D. 680, 689 (N.D. Ga. 2013); *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (denying certification for lack of typicality because court had to make individualized determinations to establish liability);

**B.**     **Plaintiff Cannot Meet Any of the Requirements of Rule 23(b)**

**1.**     **The Requested Injunction Is Moot Under Rule 23(b)(2)**

No injunctive class can be certified because (1) Defendant stopped putting "natural" on its label long ago and has no intention of doing so again, and (2) Plaintiff does not intend to

purchase the products again and thus lacks standing to try to prevent any future "injury."

### a.     Defendant No Longer Labels Its Products as "Natural"

Because Defendant no longer sells *any* product with an "all natural" label, Plaintiff's injunctive relief claim is moot.  For this reason, in *Figy v. Frito-Lay North Am., Inc.*, 2014 WL 3953755 (N.D. Cal. Aug. 12, 2014), the Court dismissed nearly identical "all natural" claims:

> Defendant has furnished two declarations showing the current labeling for the Products and specifically stating that the allegedly offending labels were no longer being printed when Plaintiffs filed their complaint … Because Plaintiffs have failed to offer any affirmative evidence to satisfy the Court that it has subject-matter jurisdiction over Plaintiffs' claims for injunctive relief, Plaintiffs allegations are DISMISSED.

Similarly here, Defendant removed its "natural" label long before getting Plaintiff's demand letter and is no longer selling *any* products with a "natural" label.  (Kestenbaum Decl. ¶¶ 9-12.)

### b.     Plaintiff Does Not Intend to Purchase the Products Again

Plaintiff alleges he "would not have purchased the Products had [he] known that they contained ingredients that are not 'All Natural.'" (Compl. ¶ 53.)  Because Plaintiff will not purchase the products in the future, he cannot seek prospective injunctive relief:

> [A] plaintiff does not have standing to seek prospective injunctive relief against a manufacturer or seller engaging in false or misleading advertising unless there is a likelihood that the plaintiff would suffer future harm from the defendant's conduct – i.e., the plaintiff is still interested in purchasing the product in question.

*Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957 *4 (S.D. Cal. May 13, 2013).[8]

---

[8] *See also Veal v. Citrus World, Inc*., 2013 WL 120761 *6 (N.D. Ala. Jan. 8, 2013) (dismissing injunctive claim because plaintiff had no threat of future injury from allegedly mislabeled food); *Tomasino v. Estee Lauder Co. Inc., et al*., 2014 WL 4244329, *3 (E.D.N.Y. Aug. 26, 2014) (Plaintiff "has not alleged a sufficient future injury to establish standing to assert her claims for injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase [the] products again"); *Robinson v. Hornell Brewing Co*., 2012 WL 1232188 (D.N.J. April 11, 2012) (where plaintiff had "no intention of ever purchasing any Arizona product in the future" he "cannot demonstrate that he is likely to suffer future injury from Defendant's labeling practices"); *Rahman v. Mott's LLP*, 2013 WL 325241 *10 (N.D. Cal. Jan. 29, 2014).

### 2.      No Rule 23(b)(3) "Damages" Class Can Be Certified

Plaintiff cannot satisfy Rule 23(b)(3)'s standard for requiring a valid damages methodology, predominance of common issues over individualized ones, or that a class action is a superior means for resolving the dispute.

### a.      There Is No Way to Prove Class-Wide Damages

In *Comcast*, the Court held that to prove predominance, plaintiff must present a damages model that is "susceptible of measurement across the entire class." 133 S. Ct. at 1433-34.  As many courts have held in identical cases, no valid methodology for class "damages" exists.[9]

Here, Plaintiff asserts that consumers "paid a price premium for the Products" which the Court should award as class-wide damages.  (Compl. ¶¶ 52-57.)  However, the "price premium" theory fails the most basic objective test:  the price charged for Dippin' Chips' stayed the same and sales **rose** after the term "natural" was removed from the label.  (Kestenbaum Decl. ¶¶ 13, 16.)  Under the basic economics theory, consumers could not have paid extra for the word "natural."

The Honorable Charles Breyer's analysis in *ConAgra*, 2014 WL 2702726 at *19-23, is instructive.  As here, Plaintiff alleged that ConAgra had mislabeled its products "100% natural," and proffered an "expert" who claimed that he could calculate class-wide damages through three separate methodologies (1) a "restitution" theory, (2) a "benefit of the bargain" or "price premium" theory, and (3) a "regression" theory.  *Id.*  The Court rejected all of these methodologies as inherently flawed, and denied class certification.

---

[9] *Supra* at 9 (collecting cases denying class certification against Ben & Jerry's, ZonePerfect, Kashi and Snapple).  *E.g.*, *Snapple*, 2010 WL 3119452 *10 ("plaintiffs offer no evidence that a suitable methodology is available to prove the elements of causation and actual injury on a class-wide basis. Individualized inquiries would therefore be required in order to determine whether class members in fact paid a premium for Snapple beverages, and whether any such premium was attributable to the 'All Natural' labeling. This would require, among other things, an examination of each of the millions of class members' Snapple purchases, which the evidence shows were made in different locations, at different times, and for different prices").

First, the Court rejected a "restitution" model based on the wholesale or resale prices because consumers ate the products and thereby obtained some benefit from them. *Id*. at 19. Second, the Court rejected the "benefit of the bargain" or "price premium" theory because it was impossible to attribute the price differential between defendant's products and the "substitute goods" used by plaintiff's expert to the "100% natural" statement because so many other differences between the goods, such as branding, could drive price. *Id*. at *20. It further pointed out that the expert "does not know what individual class members paid," which precluded figuring out what any price differential was. *Id*. at *21. Third, the Court rejected the regression method because the "model requires purchase price information in order to allocate any award," and such information varied by consumer. *Id*. at *22.

The same holds true here. Class members obtained a benefit from eating Defendant's product, so "restitution" would not be an appropriate model. The "price premium" theory is not viable because Plaintiff has not submitted any evidence of substitute goods or what they could be. As Judge Breyer held, such an approach is inherently flawed and would depend on Plaintiff knowing the price each individual consumer paid, which would vary by customer, as retailers across Florida are free to charge whatever they want for Dippin' Chips. Third, as in *ConAgra*, because individual pricing would be required, a regression model would not work either.

**b.      Individualized Issues Predominate this Action**

A class cannot be certified unless Plaintiff proves that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *T-Mobile*, 564 F.3d at 1263. Here, individualized issues of consumer choice, causation, reliance, materiality, who purchased the product(s), which of the 22 labels they saw, and how much they paid predominate over any potential common question.

In "natural" labeling cases, courts have consistently rejected class certification because

consumers have no common definition of what "natural" means, and whether the term "natural" impacted any putative class member's purchasing choice is also an individualized issue. *E.g.*, *ConAgra*, 2014 WL 2702726 at *16 (Plaintiff's expert "testimony does not demonstrate that it is necessarily 'material to reasonable consumers' … there are numerous reasons a customer might buy Hunt's tomatoes"); *Kashi*, 291 F.R.D. at 508 (Plaintiffs fail to "show that 'All Natural' has any kind of uniform definition among class members, that a sufficient portion of class members would have relied to their detriment on the representation").[10]

Whether any class member even saw the word "natural" is also an individualized issue. First, "natural" was not on all the labels sold in the putative class period. (Kestenbaum Decl. ¶ 4.)  Second, for the labels that had "natural," the text was at the top of the package in an area where consumers would not see it on the shelf.  (*Id.* ¶ 6.)  *See ConAgra*, 2014 WL 2702726 at *17 (quotation omitted) ("there is a lack of cohesion among the class members here, both because consumers were exposed to label statements that changed over time and from product to product, and, more importantly, because even if the challenged statements were facially uniform, consumers' understanding of those representations would not be.").[11]

### c.     A Class Action Is Not a Superior Way to Resolve This Dispute

Because a class action would be unmanageable, superiority does not exist.  *ConAgra*, 2014 WL 2702726 at *24 (no superiority where Plaintiff could not identify class members).

## <u>CONCLUSION</u>

For each of the foregoing reasons, Plaintiff's motions should be denied.

---

[10]  Even the propaganda cited in the Complaint states only 50% of consumers care about the term.  (Compl. ¶ 32.)

[11]  *See also*, *e.g.*, *True v. ConAgra Foods, Inc.*, Case No. 07-cv-00770, 2011 WL 176037, *5 (W.D. Mo. Jan. 4, 2011) (individualized issues predominate because "each member would need to present evidence that he or she purchased one or more pot pies subject to the recall. This would be an extremely individualized inquiry"); *Hodes v. Van's Int'l Foods*, 2009 WL 2424214 *4 (C.D. Cal. July 23, 2009) ("individual questions of who purchased Van's frozen waffles during the relevant class period" would predominate).

Dated: October 9, 2014

Respectfully Submitted,

 /s/ Regan N. Kruse
Edward M. Mullins (Fla. Bar No. 863920)
emullins@astidavis.com
Regan N. Kruse (Fla. Bar No. 84404)
rkruse@astidavis.com
ASTIGARRAGA DAVIS MULLINS
& GROSSMAN, P.A.
1001 Brickell Bay Drive, Ninth Floor
Miami, Florida  33131
Tel.: (305) 372-8282 / Fax:  (305) 372-8202

-and-


J. Noah Hagey*
BRAUNHAGEY & BORDEN LLP
220 Sansome Street, 2nd Floor
San Francisco, CA 94104
Office:  (415) 599-0210
Fax:  (415) 276-1808

* Pro hac vice application to be filed


Attorneys for Defendant,
That's How We Roll, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 9, 2014, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF filing system.  I also certify that the

foregoing document is being served this date on all counsel of record or pro se parties on the

Service List below in the manner specified, either via transmission of Notices of Electronic

Filing generated by the CM/ECF system or; in some other authorized manner for those counsel

or parties who are not authorized to receive electronically Notices of Electronic Filing.


　　　　　　　　　　　　　　　　　　　　 */s/ Regan N. Kruse*　　　　　　　　
　　　　　　　　　　　　　　　　　　　　Regan N. Kruse (Fla. Bar No. 84404)


## SERVICE LIST

Michael Thomas Fraser
The Law Offices of Howard W. Rubinstein, P.A.
1615 Forum Place, Suite 4C
West Palm Beach, FL 33401
Tel: (800) 436-6437
Fax: (415) 692-6607
Email: mfraser@hwrlawoffice.com

Counsel for Plaintiff, David Scarola

22